OPINION OF THE COURT
Alma M. Gomez, J.
This is a decision and order on a notice of motion filed by the Administration for Children’s Services (ACS) on February 29, 2016, seeking to withdraw the neglect petition filed on July 15, 2015 against the respondent mother, Lisa C. (Ms. C.). The petition in this child protective proceeding alleges that Ms. C. failed to provide her 17.9-year-old daughter, Julissa R, with proper supervision and guardianship. The Bronx Defenders, attorneys for Ms. C., filed an affirmation in support of ACS’ motion on March 17, 2016. The Legal Aid Society, attorneys for the subject child, also joined in ACS’ application, and submitted an affirmation in support of the respondent’s motion to withdraw on March 24, 2016 (the court notes that the movant is the presentment agency and not the respondent mother). In the alternative, the Attorney for the Child seeks to dismiss the petition. All counsel cite Family Court Act § 1051 (c) in support of their respective positions.
For the reasons set forth below, ACS’ motion to withdraw the neglect petition is denied in its entirety, and the matter is scheduled for a fact-finding hearing within 30 days.
Background
The presentment agency, ACS, commenced this Family Court Act article 10 proceeding with the filing of a neglect petition on July 15, 2015. Specifically, the petition alleges, in sum and substance, the following: ■
“Allegation la.: On or about May 15, 2015, the respondent mother stated to the undersigned that *384 the FBI hears everything and records everything that she does. The respondent mother also stated to the undersigned that she has video cameras in her eyes, microphones in her ears and fake skin. The respondent mother also stated that the undersigned needed to be careful if she goes to court, in that everyone who testified against her in the past has died.
“Allegation lb.: On or about June 1, 2015, during a home visit to the respondent mother’s home, the respondent mother was extremely angry at CPS due to a bed being ordered for a family member and continued to insist that ACS was charging her for it despite CPS trying to explain that the bed was free. The respondent mother also stated that there was a contract in the bed from the FBI and that she did not want to have it in the apartment. “Allegation lc.: According to the maternal sister, Gladys C, on or about the evening of June 1, 2015 the respondent mother tore apart the bed with a box cutter. As a result of this behavior, the maternal sister called 911 and the respondent mother was transported to Bronx Lebanon Hospital.
“Allegation Id.: According to records and staff from Bronx Lebanon Hospital the respondent mother was admitted and psychiatrically hospitalized from June 2, 2015 to June 24, 2015. According to the staff at Bronx Lebanon Hospital, during the respondent mother’s stay she refused to take any recommended medication, participate in a mental health evaluation or sign any paperwork.
“Allegation le.: According to the respondent mother and the subject child Julissa P, Julissa has not attended school in approximately five years. According to the principal, Keenan Hugh at St. Margret School, the respondent mother was informed of the process regarding home schooling. The respondent mother stated to the undersigned that the child stopped going to school because of health reasons, but since then she never ensured that Julissa returned to school.
“Allegation If.: According to Julissa’s pediatrician, Dr. Anil Gupta, Julissa is obese and has only one kidney. Dr. Gupta indicated that the subject child was last seen on 12/24/10. A referral was given to *385 the respondent mother for the subject child to be evaluated by an endocrinologist, Dr. Genna Klein, and for mental health services at Montefiore Hospital based on her issues with obesity. To date, the respondent mother has not provided ACS with any documentation demonstrating follow up regarding Julissa’s medical needs.”
On July 15, 2015, the court ordered the temporary release of Julissa to Ms. C.’s care under the following conditions: (1) Ms. C. was to engage in mental health services; (2) Ms. C. was to attend to Julissa’s medical needs, including scheduling appointments with an endocrinologist and nutritionist; (3) Ms. C. was to sign all appropriate releases, including HIPAA forms for the release of medical and school information; (4) Ms. C. was to comply with all reasonable referrals; (5) Ms. C. was to comply with announced and unannounced home visits; and (6) Ms. C. and Julissa were to comply with a mental health evaluation for Julissa.
On September 17, 2015, ACS reported that Ms. C. failed to comply with the referrals. On September 22, 2015, Ms. C.’s attorney requested that ACS withdraw the neglect petition as the respondent mother had made an appointment for her daughter to be seen at Mount Sinai Hospital, and Julissa was enrolled in an online GED course. Both Ms. C. and Julissa contended that they did not want ACS “in their life.” ACS was not prepared to withdraw its petition, and the court requested proof that the child had a medical appointment scheduled, and was enrolled in an educational program.
On December 18, 2015, ACS made an oral application to withdraw the petition because Julissa had turned 18, and the agency believed nothing further could be done for the child as she did not want ACS in her life. Additionally, Ms. C. failed to engage in any services. Ms. C. has failed to comply with the court’s July 15, 2015 order. Prior to xx/xx/2015, Julissa’s 18th birthday, Ms. C. had not taken Julissa to a doctor to address her many health issues, nor was Julissa enrolled in an education program. Further, Ms. C. failed to comply with the court’s order directing her to engage in mental health services and comply with all reasonable ACS referrals. On December 23, 2015, at the court’s request, ACS submitted a report detailing the efforts made by the Child Protective Specialist to engage the family in services.
On January 29, 2016, ACS renewed its application to withdraw the petition. The court directed ACS to contact New *386 York City Adult Protective Services (APS) regarding this matter, and submit a written report to the court regarding any assistance APS could offer the family. On February 5, 2016, ACS informed the court that APS determined that Julissa was ineligible for services as she did not suffer from any physical or mental impairment. On February 9, 2016, the court instructed ACS to file a motion to withdraw the neglect petition.
Motion to Withdraw
A. Withdrawal of Neglect Petition, Pursuant to Family Court Act § 1051 (c), Prior to Fact-Finding
The principal issue presented here, under Family Court Act § 1051 (c), is whether “the aid of the court” is still required. The court’s resolution of the issue turns on the meaning and scope of Family Court Act § 1051 (c), and how it applies in this case.
ACS contends that because the respondent mother has repeatedly failed to comply with the court’s order and its supervision, the court’s aid is no longer required and, therefore, the petition should be dismissed pursuant to Family Court Act § 1051 (c). The court, however, does not find Family Court Act § 1051 (c) persuasive on this point. Family Court Act § 1051 (c), standing alone, fails to address the legal inquiry the court must make in deciding whether to grant an application to permit, what is in this court’s view, a request to voluntarily withdraw a pending action.
Section 1051 (c) governs orders sustaining or dismissing child abuse and neglect petitions. Family Court Act § 1051 (c) states:
“If facts sufficient to sustain the petition under this article are not established, or if, in a case of alleged neglect, the court concludes that its aid is not required on the record before it, the court shall dismiss the petition and shall state on the record the grounds for the dismissal.”
This subdivision authorizes dismissal upon two separate and distinct grounds: (a) the petition is not established, i.e., ACS has failed to prove abuse or neglect; or (b) in neglect (but not abuse) cases, the court has concluded that its aid is not required. The first contingency, failure to sustain the petition, has been developed through extensive case law. However, the second contingency, that the court’s aid is not required, has had limited case law development.
While there is little case law on point with this issue, the court, under this section, is permitted to dismiss a petition *387 satisfying the formal requirements of neglect when it deems the matter not of sufficient seriousness to require the court’s aid (see Matter of J.H., 15 Misc 3d 1111 [A], 2007 NY Slip Op 50587 [U], *2 [Fam Ct, Bronx. County 2007], citing Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1051 at 216 [1999], quoting Committee Comments, Joint Legislative Committee on Court Reorganization, Family Ct Act § 351). Nonetheless, the court’s exercise of its authority under this section is discretionary and must be utilized in a manner that emphasizes and promotes the best interests of the child (id. at *3). Thus, in Matter of J.H., the court held that “[dismissal of a neglect case on the grounds that the aid of the court is no longer required should be applied in cases where the risk of danger to the child has passed” (id. at *4).
In Matter of Sharnaza Q. (Clarence W.) (68 AD3d 436 [1st Dept 2009]), the Appellate Division, First Department, denied the respondent grandfather’s motions to dismiss the neglect petitions under Family Court Act § 1051 (c). At the time, one child had been paroled to her mother, and the other was placed with the respondent’s mother (the child’s great-grandmother). Respondent grandfather appealed the court’s order directing continued supervision. The grandfather repeatedly stated that he wished to have contact with his grandchildren, and he did, in fact, have unsupervised contact with them. Nonetheless, the Court held that “[t]he agreed-upon placement of the child with a relative did not, under the circumstances, obviate the necessity for the court to . . . impose conditions upon respondent” (Matter of Sharnaza Q., 68 AD3d at 436, quoting Matter of Diana Y, 246 AD2d 340, 340 [1st Dept 1998]). Moreover, given the seriousness of the respondent’s involvement with controlled substances, supervision by the agency was found necessary for the purpose of monitoring his conduct (id., citing Matter of A.G., 253 AD2d 318, 328 [1st Dept 1999]).
This court views the issue presented here as similarly akin to the factual scenario in Matter of Billy R. (103 Misc 2d 988 [Fam Ct, Queens County .1980]), where the court, when presented with a motion to withdraw filed by the Commissioner of Social Services, concluded that section 1051 (c) was not “necessarily controlling” since the petitioner was not seeking to dismiss the petition but instead sought to withdraw its neglect petition before a fact-finding hearing commenced (see Matter of Billy R., 103 Misc 2d at 990-991). It appeared, therefore, to *388 that particular court, that the relevant statute would be one dealing with the voluntary discontinuance of the petition, not the dismissal of a petition.
The method or procedure for voluntarily discontinuing an action is not prescribed in the Family Court Act. Therefore, the court must turn to the applicable provision of the Civil Practice Law and Rules. A voluntary discontinuance is governed by CPLR 3217 (b), which provides: “an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper.”
In a child protective proceeding, the right to terminate an action voluntarily is not absolute as other overarching interests and rights are involved in the proceeding. New York courts have traditionally observed that in matters involving the welfare of children, not only the parties to the action, but the “public has an interest in the continuation of the proceeding” (103 Misc 3d at 991, citing Matter of Rich v Kaminsky, 254 App Div 6, 7 [1st Dept 1938]; Matter of Julie J. v Edwin A., 86 Misc 2d 882, 883 [Fam Ct, NY County 1976]). Here, the court is dealing with a neglect petition, and therefore, the welfare and best interests of Julissa is of paramount concern.
The court finds that the allegations in the neglect petition are serious enough to warrant a continuation of the proceeding. Additionally, the court is reluctant to permit the dismissal or withdrawal of the petition because the person alleged to be a danger to the child continues to live with the child. Ms. C.’s poor judgment, and lack of insight into the damaging, and potentially life-threatening consequences of her failure to ensure that her daughter received necessary medical care and an appropriate education causes concern to this court, and permitting the dismissal or withdrawal of the present neglect petition would constitute an improvident exercise of discretion. The court cannot abdicate its statutory responsibility to protect children from injury or mistreatment. Hence, the aid of the court remains necessary.
Moreover, even if ACS were to argue that they no longer wish to prosecute this matter because the child is 18 years old, a proper motion to the court under the applicable CPLR provision would be required. Accordingly, the motion to withdraw the neglect petition, pursuant to Family Court Act § 1051 (c), is denied.
*389 B. Effect of a Denial of a Motion to Withdraw in a Child Protective Proceeding Once the Subject Child Turns 18 Years Old
Counsel argues that as the subject child has turned 18 years old, the petitioner lacks jurisdiction over the child. It is well-settled that the Family Court’s authority and jurisdiction to hear and decide a case involving child neglect does not terminate when a child turns 18 years of age (see Matter of Vernice B. [Patton], 129 AD3d 714, 715 [2d Dept 2015]). It is incomprehensible to this court why the presentment agency would commence an action in Family Court when the subject child is 17.9 years of age, and then decide the matter no longer requires the court’s aid because the child has turned 18. The authority of the court to determine this matter does not cease when a child turns 18. However, while there are limitations in the available and appropriate dispositional orders that the court can make the court is not without authority to hear and decide the issues raised at a fact-finding.
Therefore, when a child is less than 18 years of age on the date the proceeding is initiated, the case may continue, regardless of whether that child has reached 18 years old during the interim period (see Matter of Sheena B. [Rory F.], 83 AD3d 1056, 1058 [2d Dept 2011] [Court held that the Family Court should have denied the discontinuance request, emphasizing the fact that the child could receive services until age 21]). The court, however, is quick to point out that in some cases, there may be a valid reason to dismiss when a child has reached majority, but that is a dispositional matter, not a jurisdictional issue.
Conclusion
Although the court is ordinarily required to make a finding when there is sufficient proof, the court may dismiss a neglect petition if it “concludes that its aid is not required on the record before it.” In this case, the presentment agency’s basis for seeking withdrawal of the neglect petition is premised upon the subject child reaching the age of majority, coupled with the lack of cooperation by the subject child and the respondent mother.
For the reasons previously discussed, the court is unable to conclude that its aid is not required on the record before it because a fact-finding hearing has not yet been commenced and concluded. Therefore, the court is denying the application to withdraw or dismiss the petition at this time.
*390 Accordingly, it is hereby ordered that ACS’ motion to withdraw is denied; and it is further ordered that the matter be scheduled for fact-finding hearing within 30 days of this decision and order.